## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FNY PARTNERS FUND LP, on Behalf of Itself and All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION |
| vs. | |
| CAPRI HOLDINGS LIMITED, JOHN D. IDOL, THOMAS J. EDWARDS, JR., TAPESTRY, INC., JOANNE C. CREVOISERAT, and SCOTT A. ROE, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 2

II.     JURISDICTION AND VENUE ........................................................................... 5

III.    PARTIES ............................................................................................................. 7

    A.    Plaintiff ................................................................................................. 7

    B.    The Capri Defendants .......................................................................... 7

    C.    The Tapestry Defendants ..................................................................... 7

IV.     FACTUAL BACKGROUND ............................................................................... 8

V.      DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS OF MATERIAL FACTS DURING THE CLASS PERIOD ........... 12

VI.     ADDITIONAL SCIENTER ALLEGATIONS .................................................. 23

VII.    LOSS CAUSATION .......................................................................................... 25

VIII.   CLASS ACTION ALLEGATIONS ................................................................... 26

IX.     APPLICABILITY OF THE PRESUMPTION OF RELIANCE ...................... 28

X.      NO STATUTORY SAFE HARBOR .................................................................. 28

COUNT I  For Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants ................................................................. 29

COUNT II  For Violation of §20(a) of the Exchange Act Against All Defendants ..................... 30

XI.     PRAYER FOR RELIEF ..................................................................................... 31

XII.    JURY DEMAND ............................................................................................... 32

FNY Partners Fund, LP ("Plaintiff"), by and through its undersigned counsel, brings this federal securities class action on behalf of a class (the "Class") consisting of itself and all other investors who purchased Capri Holdings Limited ("Capri") stock or sold Capri puts between August 10, 2023 and October 24, 2024, both dates inclusive (the "Class Period"), and were damaged as a result of defendants' wrongdoing alleged herein. Plaintiff's claims are brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), against (i) Capri, (ii) Capri's Chief Executive Officer and Chairman of the Capri Board of Directors, John D. Idol, (iii) Capri's Chief Financial Officer and Chief Operating Officer, Thomas J. Edwards, Jr., (iv) Tapestry, Inc. ("Tapestry"), (v) Tapestry's President and Chief Executive Officer, Joanne C. Crevoiserat, and (vi) Tapestry's Chief Financial Officer and Chief Operating Officer, Scott A. Roe (collectively, "Defendants").

Plaintiff's claims are based upon personal knowledge as to itself and its own acts and upon information and belief as to all other matters. Plaintiff's information and belief is based on the independent investigation of its undersigned counsel, which included, among other things, (i) a review of the U.S. Securities and Exchange Commission ("SEC") filings of Tapestry and Capri; (ii) the press releases and other public statements of Tapestry and Capri; (iii) filings in the case captioned *Federal Trade Commission v. Tapestry, Inc.*, No. 1:24-cv-3109-JLR (S.D.N.Y. filed Apr. 23, 2024); and (iv) analyst reports, media reports, and other publicly disclosed reports and information about Capri and Tapestry's failed attempt to acquire Capri (the "Capri Acquisition" or "Acquisition").

The investigation by Plaintiff's counsel into the factual allegations contained herein is ongoing, and many of the relevant facts are known only by Defendants, or are exclusively within

Defendants' custody or control.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.     <u>INTRODUCTION</u>

1.      This action arises out of Defendants' failed effort to combine Capri and Tapestry in a merger that was announced on August 10, 2023 and valued at approximately $8.5 billion. Both Capri and Tapestry are dominant companies in the global fashion industry, including in the "accessible luxury" handbag market in the United States and other countries.

2.      Throughout the Class Period, Defendants repeatedly touted the purported complimentary nature of the proposed Capri Acquisition and the supposed value it would provide to the shareholders of both Capri and Tapestry.  Defendants also publicly expressed confidence that they would obtain all necessary regulatory approvals for the transaction, including approval from the Federal Trade Commission ("FTC") under relevant federal antitrust laws.

3.      For example, in an August 10, 2023 press release announcing the Capri Acquisition, Defendant Idol proclaimed that the "planned acquisition of Capri Holdings by Tapestry marks a major milestone for our company . . . ***We are confident this combination will deliver immediate value to our shareholders***."[1]  Similarly, on an August 17, 2023 Tapestry earnings call, Defendant Crevoiserat asserted that "***we're confident in our ability to complete this transaction***," and described the Tapestry and Capri brands as "***distinctive***" with "unique positioning in the market," making the Capri Acquisition a driver for "more innovation, more connectivity and really more relevance for the consumer ***which will benefit all of our stakeholders around the world***."

4.      On November 3, 2023, Capri and Tapestry each received a request for additional information and documentary materials from the FTC in connection with its antitrust review of the

---

[1] All emphasis herein is added unless otherwise noted.

Capri Acquisition.   In response, both Capri and Tapestry assured shareholders that they "continue[d] to expect that the Transaction will be completed in calendar year 2024."  During a November 9, 2023 Tapestry earnings call, Defendant Roe reiterated this message by stating that "we're working towards receiving all required regulatory approvals, including responding to the FTC's [] request.  *We remain confident in our ability to complete the transaction with a close anticipated in calendar year 2024*, consistent with our prior outlook," and that Tapestry was "*confident in [its] ability to execute*" the Capri Acquisition.

5.    Defendants also publicly disputed any suggestion that the Capri Acquisition would have an anticompetitive impact on consumers.  In an April 15, 2024 interview with a fashion industry trade journal, Defendant Crevoiserat asserted that while "[t]he FTC is still reviewing [the Capri Acquisition] . . . we continue to be confident because *we know that this is a transaction that is pro-consumer*."

6.    Despite these assurances to shareholders, on April 23, 2024, the FTC filed a complaint in the United States District Court for the Southern District of New York to preliminarily enjoin the Capri Acquisition under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. §53(b), and Section 16 of the Clayton Act, 15 U.S.C. §26 (hereinafter "*FTC v. Tapestry*").  This complaint followed the FTC's April 22, 2023 issuance of an administrative complaint concerning the Capri Acquisition.  The complaint in *FTC v. Tapestry* asserted that the Capri Acquisition would eliminate direct, head-to-head competition between the companies' signature brands in the "accessible luxury" handbag market.

7.    Capri vehemently denied the FTC's allegations in a Form 8-K filed with the SEC on April 22, 2024.  In its SEC filing, Capri disputed that the Capri Acquisition would create any anticompetitive effects by asserting that "[t]he market realities, which the government's challenge

ignores, overwhelmingly demonstrate that **this transaction will not limit, reduce, or constrain competition**." Capri repeated this assertion in its fourth quarter and full year fiscal 2024 financial results filed May 29, 2024 on SEC Form 8-K.

8.    Tapestry echoed Capri's message in a Form 8-K filed with the SEC on April 22, 2024. Tapestry asserted in its attached press release that "[t]here is no question that this is **a pro-competitive, pro-consumer deal**," and that "**[w]e have full confidence in the merits and pro-competitive nature of this transaction**. It will bring **significant benefits to the combined company's . . . shareholders** in the U.S. and around the world."

9.    During a May 9, 2024 investor conference call, Tapestry's Chief Executive Officer ("CEO"), Defendant Crevoiserat, repeated this position to investors by stating that "[w]e remain confident in the merits and **pro-competitive, pro-consumer nature of this transaction**" and "continue to expeditiously work to close the transaction in calendar year 2024." This statement was repeated by Tapestry in its August 15, 2024 press release announcing the company's fourth quarter and fiscal year 2024 financial results.

10.    Each of these statements by Defendants, together with their other Class Period statements detailed further below, was materially false and misleading when made because they misrepresented and omitted adverse facts concerning Capri and Tapestry's business and the prospects for FTC approval of the Capri Acquisition, which were known to Defendants or recklessly disregarded by them during the Class Period.

11.    Specifically, and as first revealed by the court's October 24, 2024 injunction ruling in the *FTC v. Tapestry* case, Defendants knew, or were reckless in not knowing, that (i) "accessible luxury" handbags represent a distinct and well-defined market that is separate from the market for "luxury" and "mass market" handbags; (ii) Capri and Tapestry considered their signature Coach

and Michael Kors "accessible luxury" handbags to be direct, head-to-head competitors; (iii) a primary rationale for the Capri Acquisition was to reduce competition, increase prices, improve profit margins, and reduce consumer options within the "accessible luxury" handbag market; and given these known facts (iv) the risk of adverse action by the FTC was significantly higher than Defendants represented to Capri shareholders during the Class Period.

12.     The price of Capri common stock declined dramatically during the Class Period, from $53.90 per share on the August 10, 2023 announcement date of the Capri Acquisition, to $21.26 per share on October 25, 2024, the day after the court's decision to preliminarily enjoin the transaction was issued in the *FTC v. Tapestry* case. All told, this decline represented over a 60% decrease in Capri's stock price and resulted in substantial economic losses for Plaintiff and the Class.

## II.    JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.§1331 and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), and Section 27 of the Exchange Act. Defendants transact business in this District and disseminated the statements alleged to be materially false and misleading herein into this District. Defendants further agreed that the state and federal courts of Delaware, including this Court, are proper forums for adjudicating their claims related to the Capri Acquisition.

15.     Specifically, Defendants agreed that any disputes arising out of the Agreement and Plan of Merger, dated August 10, 2023 ("Merger Agreement") and Termination Agreement ("Merger Termination Agreement"), dated November 13, 2024, would be litigated exclusively in

the state and federal courts of Delaware.  Both the Merger Agreement and Merger Termination Agreement are also expressly governed by Delaware law.  In this regard, the Merger Agreement and Termination Agreement stated in pertinent part as follows:

> This [Merger] Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware . . . .
>
> . . . Each of the Parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Court of Chancery of the State of Delaware, or, if (and only if) such court finds it lacks jurisdiction, the ***Federal court of the United States of America sitting in Delaware***, or, if (and only if) such courts find they lack jurisdiction, any state court sitting in Delaware, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement . . . .
>
> \*        \*        \*
>
> This [Termination] Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware . . . .
>
> . . . Each of the Parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Court of Chancery of the State of Delaware, or, if (and only if) such court finds it lacks jurisdiction, the ***Federal court of the United States of America sitting in Delaware***, or, if (and only if) such courts find they lack jurisdiction, any state court sitting in Delaware, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement . . . .

16.    Moreover, the Capri and Tapestry brand subsidiaries at issue in this action are incorporated in Delaware, including Michael Kors LLC, Michael Kors (USA) Holdings, Inc., Michael Kors (USA) Inc., Coach (US) Partnership, LLC, Kate Spade Holdings LLC, and Kate Spade LLC.  The true business of these Delaware-incorporated entities, including the level of competition between them, is central to the claims in this action.  As a result, the events and transactions from which this litigation arises occurred in substantial part in this District.

17.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

### III.    PARTIES

#### A.    Plaintiff

18.    Plaintiff FNY Partners Fund LP is a Delaware limited partnership that invests in equity securities. As set forth in the certification attached hereto as Exhibit A, FNY Partners Fund LP purchased shares of Capri common stock during the Class Period and suffered damages due to Defendants' violations of the federal securities laws alleged herein.

#### B.    The Capri Defendants

19.    Defendant Capri is a global fashion firm. Capri stock is listed on the New York Stock Exchange ("NYSE") under the ticker symbol "CPRI." Capri's three primary fashion brands and business segments are Michael Kors, Jimmy Choo, and Versace.

20.    Defendant John D. Idol ("Idol") served as CEO, and Chairman of the Capri board of directors during the Class Period.

21.    Defendant Thomas J. Edwards, Jr. ("Edwards") served as Executive Vice President, Chief Financial Officer ("CFO"), and Chief Operating Officer ("COO") of Capri during the Class Period.

#### C.    The Tapestry Defendants

22.    Defendant Tapestry is a global fashion firm that describes itself as a "leading New York-based house of accessible luxury accessories and lifestyle brands." Tapestry stock is listed on the NYSE under the ticker symbol "TPR." Tapestry's three primary fashion brands are Coach, Kate Spade, and Stuart Weitzman.

23.    Defendant Joanne C. Crevoiserat ("Crevoiserat") served as President, Chief Executive Officer ("CEO"), and a director of Tapestry during the Class Period.

24.     Defendant Scott A. Roe ("Roe") served as CFO and COO of Tapestry during the Class Period.

25.     The Defendants referenced in ¶¶20-21 and 23-24 above are collectively referred to herein as the "Individual Defendants." The Individual Defendants are liable for the false and misleading statements pled herein because, through their positions as senior executives and/or members of the Board of Directors (the "Board") of Tapestry or Capri, possessed the power and ultimate authority to control the contents of these companies' quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  They were provided with copies of the reports and press releases alleged herein to be misleading, prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions within Capri and Tapestry, and access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations being made were then materially false and misleading.

## IV.    <u>FACTUAL BACKGROUND</u>

26.     Capri is a global fashion firm that owns several fashion brands, such as Michael Kors, which is a fashion house that manufactures and sells handbags, jewelry, ready-to-wear apparel, footwear and other products.  During fiscal year 2024, Michael Kors generated approximately 68% of Capri's $5.17 billion in total revenue.  As stated in its 2023 annual report filed with the SEC on Form 10-K on May 31, 2023, "Michael Kors offers three primary collections: the Michael Kors Collection luxury line, the MICHAEL Michael Kors *accessible luxury* line and the Michael Kors Mens line."  Capri further explained that its MICHAEL brand "is the *accessible luxury* collection and offers women's accessories, *primarily handbags* and small leather goods . .

. and is carried in all of the Michael Kors lifestyle stores and leading department stores around the world."

27.     Tapestry is also a global fashion firm that owns the brands Coach, Kate Spade and Stuart Weitzman. Like Michael Kors, Coach and Kate Spade are fashion houses that manufacture and sell handbags, among other fashion products and accessories. Coach introduced the term "accessible luxury" in advance of its initial public offering in 2000. Before it was part of Tapestry, Coach acquired fashion brand Stuart Weitzman in 2015 and Kate Spade in fiscal year 2018. Following the acquisition of Kate Spade, the combined firm was renamed Tapestry. During fiscal year 2024, Tapestry generated over $6.6 billion in sales revenue, with Coach responsible for 76.4% of Tapestry's total net sales for that year.

28.     In mid-March 2023, Tapestry CEO Crevoiserat approached Capri CEO Idol to discuss strategic opportunities. Crevoiserat and Idol held a meeting on April 4, 2023, during which Crevoiserat proposed to acquire Capri in an all-cash transaction priced at $60 per share. Other companies expressed interest in acquiring certain brands owned by Capri, but the Capri Board purportedly determined that pursuing a sale of Capri as a whole would be more advantageous. Accordingly, on May 9, 2023, the Capri Board authorized Capri's management to provide Tapestry with due diligence information on Capri. On July 31, 2023, Capri's Board approved an acquisition price of $57 per share. Due diligence on the proposed Capri Acquisition continued until August 2023.

29.     On August 10, 2023, Capri and Tapestry jointly announced their entry into the Merger Agreement, pursuant to which Tapestry would purchase Capri for $57 per share in cash. On September 20, 2023, Capri filed a Definitive Proxy Statement for the Capri Acquisition with the SEC on Form 14(a) to solicit shareholder approval of the Merger Agreement. On October 25,

2023, Capri announced that its shareholders had voted to approve adoption of the Merger Agreement, with approximately 76.2% of the record date Capri shares voting in favor of the Capri Acquisition.

30.     The Capri Acquisition would combine three close competitors in the accessible luxury handbag market: Tapestry's Coach and Kate Spade brands and Capri's Michael Kors brand. Yet, Tapestry and Capri repeatedly stated in public filings and press releases that, because their brands purportedly "face competitive pressures from both lower- and higher-priced products," the Acquisition would not stifle competition, and that they expected to obtain antitrust approval for the Capri Acquisition and for the deal to close in calendar year 2024.

31.     On November 3, 2023, the FTC issued a "Second Request" to Capri and Tapestry for information in connection with its antitrust review of the Capri Acquisition, allowing it to obtain a wide array of confidential materials not disclosed to the public.[2]

32.     Notwithstanding Defendants' assurances to investors, on April 23, 2024, the FTC brought an action to enjoin the Capri Acquisition in the United States District Court for the Southern District of New York, and subsequently moved for a preliminary injunction on August 6, 2024.  The FTC alleged that, if allowed, the Capri Acquisition would eliminate direct head-to-head competition between Kate Spade, Coach, and Michael Kors.  The FTC's allegations hinged on its argument that, within the broader market of handbags, there are three distinct submarkets: "mass market," "true luxury," and "accessible luxury."  The FTC alleged that, as Kate Spade, Coach, and Michael Kors all compete within the "accessible luxury handbag market," Tapestry's

---

[2] If the FTC has reason to believe a proposed transaction will impede competition in a relevant market, it may request more information by way of "Request for Additional Information and Documentary Materials," commonly referred to as a "Second Request."

acquisition of Michael Kors would give it a dominant share of that market, thereby likely creating an anticompetitive effect for consumers.

33.    Defendants strongly disputed the FTC's factual allegations by representing that, because Capri and Tapestry operated in highly fragmented markets, the Capri Acquisition would be "pro-consumer" and have no negative effects on competition.  For example, after the FTC's lawsuit was filed, Capri issued the following statement regarding the "market realities," stating in pertinent part as follows:

> Capri Holdings strongly disagrees with the FTC's decision.  ***The market realities, which the government's challenge ignores, overwhelmingly demonstrate that this transaction will not limit, reduce, or constrain competition.  Tapestry and Capri operate in the fiercely competitive and highly fragmented global luxury industry.  Consumers have hundreds of handbag choices at every price point across all channels, and barriers to entry are low***.

34.    On October 24, 2024, Judge Jennifer L. Rochon of the Southern District of New York granted the FTC's motion for preliminary injunction in the *FTC v. Tapestry* case.  Judge Rochon found in a detailed 169-page decision that Defendants' representations regarding the Capri Acquisition and its likely competitive effects "not . . . credible," citing a trove of internal company documents demonstrating Defendants had private views and economic understandings during the Class Period that were at odds with their public statements.  In its order, the court cited to hundreds of pages of internal company documents revealing that Defendants fully understood that their three primary brands (*i.e.*, Kate Spade, Coach, and Michael Kors) were close competitors within a well-defined "accessible luxury handbag market," and that the Capri Acquisition would hurt competition (indeed, cornering the accessible luxury handbag market was a key internal rationale for the deal), exposing Capri investors to an acute risk that the Capri Acquisition would be blocked by regulators.  Yet, as detailed below, the true nature of that risk was known only to Defendants

as they continuously misled investors regarding those adverse facts and the actual likelihood that the Capri Acquisition would be consummated as structured, and on the timeline represented to shareholders.

35.     On October 24, 2024, Capri stock closed at $41.60 per share. After the close of trading that day, the court issued its ruling preliminary enjoining the Capri Acquisition.  On October 25, 2024, the price of Capri stock fell to $21.26 per share as of the close of trading – a nearly 50% decline – severely damaging Plaintiff and the Class.

36.     Following Judge Rochon's preliminary injunction ruling, Defendants effectively conceded the anticompetitive impact of the Capri Acquisition known to them during the Class Period.  On November 14, 2024, both Capri and Tapestry announced that the companies had agreed to mutually terminate the Capri Acquisition under the Termination Agreement.  In its press release announcing the termination, Capri acknowledged that terminating was in the best interests of both companies because the "required closing condition of receiving necessary U.S. regulatory approvals was ***unlikely to be met*** by the merger agreement's outside [closing] date of February 10, 2025."

## V.     DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS OF MATERIAL FACTS DURING THE CLASS PERIOD

37.     The Class Period begins on August 10, 2023.  On that date, Capri and Tapestry announced the Merger Agreement under which Tapestry would acquire Capri for $57 per share in an all-cash transaction valued at approximately $8.5 billion.  In a press release announcing the Capri Acquisition jointly issued by Tapestry and Capri, Capri's CEO, defendant Idol, stated that "'[t]oday's announcement marks a major milestone for Capri . . . .  ***We are confident this combination will deliver immediate value to our shareholders***.'"

38.    Defendant Roe, Tapestry's CFO and COO, further stated in an investor conference call held that same day, entitled "Tapestry Inc to Acquire Capri Holdings Ltd," that "[t]he Board of Directors of both Tapestry and Capri have unanimously approved the transaction, and we expect the deal to close in calendar year 2024, subject to customary closing conditions, approval by Capri shareholders and receipt of the required regulatory approvals."

39.    During an August 17, 2023 Tapestry earnings call in which Defendants Crevoiserat and Roe discussed "the planned acquisition of Capri," an analyst with TD Cowen asked the following question regarding regulatory approvals and the potential overlap between Capri and Tapestry handbag brands:

> [W]ould love [for] you to talk to us a little bit about the approval process or major hurdles or catalysts ahead.  And also, how you thought about the differences and the opportunity of the Michael Kors brand [owned by Capri] given that you have so much research – consumer research there.  We're looking at cross-product elasticity and diversion ratios, just to understand the relationships between the [two] brands and the big opportunity, financial and strategic?

40.    Defendant Crevoiserat responded by claiming the brands were "highly complementary," "distinctive and have unique positioning in the market," stating in pertinent part as follows:

> I'll hit on the regulatory questions and the Michael Kors question briefly because I know we're running over time.  But just in short, *we're confident in our ability to complete this transaction.  This is a transaction.  It is highly complementary.  It expands our portfolio reach and diversification. And . . . we fielded a lot of research coming into this transaction*.  We know that the portfolio at Capri includes – and including Michael Kors, they're strong brands and they're well positioned in attractive markets and market segments.
>
> We're excited about the opportunity that we see working together putting these brands on our platform.  *They're distinctive and have unique positioning in the market, which is why they're so attractive to us.  And that does include the Kors brand, putting that – all of the brands on our platform allows us to take* these iconic brands with heritage put them on

13

our consumer engagement platform to drive more innovation, more connectivity and really more relevance for the consumer which will benefit all of our stakeholders around the world. So we're excited about the opportunities ahead.

41.    On November 6, 2023, Capri and Tapestry disclosed that they each received a request for additional information from the FTC in connection with its antitrust review of the Capri Acquisition. On this news, the price of Capri stock declined from $50.66 per share on November 6, 2023 to $48.82 per share on November 7, 2023 on abnormally high trading volume.

42.    Capri's announcement of the FTC's request still reaffirmed the purported timeline for closing the Capri Acquisition, stating in pertinent part as follows:

> On November 3, 2023, Capri and Tapestry each received a request for additional information and documentary materials (the "Second Request") from the Federal Trade Commission (the "FTC") in connection with the FTC's review of the Transaction. The effect of the Second Request is to extend the waiting period imposed by the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "HSR Act"), until 30 days after Capri and Tapestry have substantially complied with the Second Request, unless that period is extended voluntarily by Capri and Tapestry or terminated sooner by the FTC. Both Capri and Tapestry expect to promptly respond to the Second Request and to continue to work cooperatively with the FTC in its review of the Transaction. ***Capri continues to expect that the Transaction will be completed in calendar year 2024***, subject to the expiration or termination of the waiting period under the HSR Act and the satisfaction or waiver of the other closing conditions specified in the Merger Agreement.

43.    Tapestry issued a similar statement, claiming the company "continues to expect that the Transaction will be completed in calendar year 2024."

44.    During a November 9, 2023 earnings call, Defendant Roe discussed "the planned acquisition of Capri" and claimed that the parties still expected the Capri Acquisition to close in calendar year 2024 as they responded to FTC requests, stating in pertinent part as follows:

> Before closing, I wanted to touch more holistically on the planned acquisition of Capri. We believe the acquisition will drive significant value creation with immediate accretion to adjusted earnings, enhanced cash flow

14

and strong financial returns underpinned by a compelling industrial logic that's consistent with our commitment to being disciplined financial operators. It's important to highlight that we still expect Capri to generate double-digit EPS [earnings per share] accretion on an adjusted basis and compelling ROIC [return on invested capital]. Embedded in these expectations is the assumption that the stand-alone Capri business will generate free cash flow in the area of $500 million on a non-GAAP unsynergized basis.

Importantly, we're making progress towards transaction close. First, the shareholders of Capri Holdings Limited approved the transaction last month, satisfying one of the conditions to close. Second, *we're working towards receiving all required regulatory approvals, including responding to the FTC's second request. We remain confident in our ability to complete the transaction with a close anticipated in calendar 2024, consistent with our prior outlook*. Third, we expect to fund the purchase through a combination of permanent financing, term loans, excess Tapestry cash and expected future cash flow. A portion of which will be used to pay certain of Capri's existing outstanding debt. Our financing strategy will support rapid debt paydown with prepayable debt in order to achieve our stated leverage target within 24 months post close, given the combined company's strong cash flow generation.

And finally, our integration planning efforts are moving forward as planned, and we continue to project run rate cost synergies of more than $200 million achieved within 3 years of the close. Overall, we remain excited by the opportunity to expand our house of powerful brands, increasing our position in growing and durable categories with enhanced cash flow to invest in brand building, while funding debt pay down. This combination is transformational*, and we are confident in our ability to execute*, positioning Tapestry as a leader in innovation, talent development and shareholder return for years to come.

45.    During a February 8, 2024 earnings call, Defendant Roe similarly stated that "the planned acquisition of Capri" was moving towards regulatory approval with an expected close later in the year, stating in pertinent part as follows:

Before closing, I want to touch more holistically on the planned acquisition of Capri. We believe the acquisition will drive significant value creation with immediate accretion to adjusted earnings, enhanced cash flow and strong financial returns, underpinned by a compelling industrial logic that is consistent with our commitment to being disciplined financial operators.

To this end, it's important to highlight that we continue to expect Capri to generate double-digit EPS accretion on an adjusted basis and compelling

15

ROIC. Embedded in these expectations is the assumption that the stand-alone Capri business will generate free cash flow in the area of $500 million on a non-GAAP unsynergized basis.

And as noted, we've made further progress towards transaction close. In November, we issued $6.1 billion in USD and euro bonds, achieving an all-in debt interest rate of 6.5%, inclusive of Tapestry's existing debt and consistent with our expectations. Our financing strategy supports rapid debt paydown in order to achieve our stated leverage target within 24 months post close, given the combined company's strong free cash flow generation. We're moving forward with integration planning efforts and continue to gain confidence in our ability to achieve run rate cost synergies of over $200 million within 3 years of closing.

And finally, **we're continuing to work towards receiving all required regulatory approvals**, and as publicly announced by the Chinese regulatory authority, the transaction received clearance in China. **In terms of timing, we remain confident in our ability to complete the transaction with a close expected in calendar 2024, consistent with our original expectations**.

46.     In mid-April 2024, FTC Bureau of Competition Director Henry Liu made comments about the agency's focus at the 2024 American Bar Association Antitrust Law Spring Meeting in Washington, D.C.  Multiple news outlets reported that investors were concerned that Liu may have been referencing the Capri Acquisition as a potential enforcement target through his comments.  On this news, the price of Capri stock declined from $44.03 per share on April 9, 2024 to $39.31 per share on April 12, 2024, on abnormally high trading volume.

47.     Defendants pushed back on those reports and again provided a misleading market dynamic between Capri and Tapestry.  For example, on April 15, 2024, Defendant Crevoiserat reiterated that she still expected the Capri Acquisition to close in calendar year 2024 in an interview with *Women's Wear Daily*.  The article, entitled "Tapestry CEO Joanne Crevoiserat Signals Confidence in Capri Deal," quoted defendant Crevoiserat, who stated that "'[t]he FTC is still reviewing it, and we continue to work collaboratively with the FTC in that effort . . .  But we continue to be confident because we know that this is a transaction that is pro-consumer.'" Defendant Crevoiserat continued in pertinent part as follows:

> We expected that the regulatory process particularly would be a long one, just understanding the environment and the landscape that we're operating in . . . . So we do have a pretty wide window, and we haven't been specific and we haven't tried to be more specific given the nature of the environment and just how long these reviews take. ***We had set a calendar 2024 expectation, and we're still confident that we can complete the deal***.

Crevoiserat also stated that Capri's recent drop in sales and revenue "just illustrates the transaction's potential," stating in pertinent part as follows:

> It underscores the opportunity we have ahead of us What we do know about all three of the Capri brands – Jimmy Choo, Versace, Michael Kors – they all have strong brand equity and arguably opportunities to improve relevance with consumers.
>
> . . . Tapestry's brand-building platform and discipline could 'bring more relevant product across all three brands to the market for more consumers.'
>
> *        *
>
> We think that there's a tremendous value to unlock and opportunity with all of these brands.

48.    The same day, Defendant Crevoiserat told *Bloomberg* that the issues with regulators would work themselves out over time and "that Tapestry doesn't plan to shed brands to complete the acquisition: 'We don't think that it's necessary.'"

49.    On April 17, 2024, *The New York Times* reported that the FTC was preparing to sue to block the Capri Acquisition, according to "two people with knowledge of the matter who were not authorized to discuss the deliberations." On this news, the price of Capri stock declined from $38.93 per share on April 16, 2024 to $37.87 per share on April 17, 2024 on abnormally high trading volume.

50.    Defendants again disputed these news reports. On April 18, 2024, *Forbes* reported that Tapestry claimed to "'strongly believe this is a deal that deserves to clear as it is pro-consumer and pro-competitive'" and that "'[w]e have full confidence in the merits of this transaction and in our legal arguments, should we need to make them.'"

51.     On April 22, 2024, in a heavily redacted filing with little information disclosed beyond generalized allegations, the FTC filed suit in the United States District Court for the Southern District of New York to preliminarily enjoin the Capri Acquisition.  The FTC complaint alleged that, if allowed, the Capri Acquisition would eliminate direct head-to-head competition between Kate Spade, Coach, and Michael Kors, which it claimed all compete within the "accessible luxury handbag market." The FTC complaint alleged that there are three distinct submarkets for handbags: (i) "accessible luxury" (a.k.a., "affordable luxury" or "aspirational luxury"), "crafted predominantly in Asia from high-quality materials and with fine craftsmanship at affordable prices" (*e.g.*, Tory Burch, Marc Jacobs, Longchamp); (ii) "mass market" (a.k.a., "fast fashion" or "opening price point"), "made in bulk in China from lower-quality materials and sold at lower prices" (*e.g.*, Zara, H&M, Steve Madden); and (iii) "true luxury" (a.k.a., "luxury," "pure luxury," "traditional luxury," "European luxury," etc.), "crafted predominantly in Europe that sell at significantly higher prices" (*e.g.*, Louis Vuitton, Dior, Gucci, Chanel, Prada, Fendi, Hermès).

52.     The FTC complaint further described "accessible luxury" handbags as those that "boast quality leather and craftsmanship (as distinguished from mass-market handbags) at an affordable price (as distinguished from true luxury handbags)."  The FTC alleged that Tapestry's acquisition of Michael Kors – which competes against Coach and Kate Spade – would give Tapestry a dominant share of the "'accessible luxury' handbag market."  On this news, the price of Capri stock declined from $37.96 per share on April 22, 2024 to $34.81 per share on April 25, 2024, on abnormally high trading volume.

53.     Also on April 22, 2024, Capri issued a statement, which it filed with the SEC on Form 8-K, claiming that the FTC had misrepresented the "'market realities'" undergirding the Capri Acquisition, stating in pertinent part as follows:

Capri Holdings strongly disagrees with the FTC's decision. ***The market realities, which the government's challenge ignores, overwhelmingly demonstrate that this transaction will not limit, reduce, or constrain competition. Tapestry and Capri operate in the fiercely competitive and highly fragmented global luxury industry. Consumers have hundreds of handbag choices at every price point across all channels, and barriers to entry are low***. Capri intends to vigorously defend this case in court alongside Tapestry and complete the pending acquisition. The U.S. FTC is the only regulator that did not approve this transaction, which received required approvals from all other jurisdictions. We remain confident in this combination and the value it will bring to all stakeholders.

54.     That same day, Tapestry issued a similar statement "in response to the [FTC's] attempt to block its proposed acquisition of Capri," stating in pertinent part as follows:

> ***There is no question that this is a pro-competitive, pro-consumer deal and that the FTC fundamentally misunderstands both the marketplace and the way in which consumers shop. Tapestry and Capri operate in an intensely competitive and highly fragmented industry alongside hundreds of rival brands, including both established players and new entrants.***
>
> ***We also compete for consumers who are cross-shopping a wide range of channels and brands along a vast pricing spectrum when considering what to purchase. The reality is that consumers have a host of choices when shopping for luxury handbags and accessories, footwear, and apparel, and they are exercising them.***
>
> ***The bottom line is that Tapestry and Capri face competitive pressures from both lower- and higher-priced products. In bringing this case, the FTC has chosen to ignore the reality of today's dynamic and expanding $200 billion global luxury industry***.
>
> This transaction will unite six brands that offer products across a wide range of categories. With Capri, Tapestry will gain access to a broader set of global luxury consumers and geographies and will drive sustainable, healthy growth for Capri's iconic brands, building desire and engagement with consumers globally. Tapestry has a strong record of not only innovating for consumers but also providing industry-leading wages and benefits for our employees. The combined company will continue to set the bar for both consumer and employee experiences.
>
> ***We have full confidence in the merits and pro-competitive nature of this transaction. It will bring significant benefits to the combined company's customers, employees, partners, and shareholders in the U.S. and around the world. We have strong legal arguments in defense of this transaction***

19

> ***and look forward to presenting them in court and working expeditiously to close the transaction in calendar year 2024.***

55.    Defendant Crevoiserat also gave an interview to *The New York Times* on April 22, 2024 criticizing the FTC's case, claiming: "'***It's quite clear to us that they don't understand how consumers shop today and they don't understand the dynamics of a marketplace with no barriers to entry, constant influx of new competitors***.'"

56.    During a May 9, 2024 investor conference call, Defendant Crevoiserat stated that the 2024 timeline to close the Capri Acquisition "***always contemplated the potential for litigation***" and that the deal was "***pro-competitive***" and "***pro-consumer***," stating in pertinent part as follows:

> I'd like to provide an update on our pending acquisition of Capri. First and foremost, we remain excited by the opportunity to expand our house of powerful brands, positioning Tapestry as a leader in innovation. The combined company will bring significant benefits to customers, employees, partners and shareholders around the world.
>
> By investing in and growing Capri's brands, we will bring more innovation to more consumers globally, positioning us to better compete within the growing over $200 billion global luxury market for handbags, accessories, footwear and apparel. Further, through this combination, we will be a home and incubator for talent, driving our purpose-led and people-centered mission and continuing to elevate employee and consumer experiences.
>
> With regard to the transaction time line, following unconditional approval from the European Commission and regulatory approvals in China and Japan, the FTC filed a suit on April 22 to block the proposed acquisition. ***We remain confident in the merits and pro-competitive, pro-consumer nature of this transaction and look forward to presenting our strong legal arguments in court. Our time line always contemplated the potential for litigation, and we continue to expeditiously work to close the transaction in calendar year 2024***. In the meantime, and as always, we remain focused on continuing to execute on our current business and strategic growth agenda.

57.    Tapestry reiterated its assertion about the "pro-competitive, pro-consumer nature" of the Capri Acquisition in its August 15, 2024 press release announcing the company's fourth quarter and fiscal year 2024 financial results.

58.    Defendant Idol restated these points in Capri's fourth quarter and full year fiscal 2024 financial results filed with the SEC on Form 8-K on May 29, 2024.  In the Form 8-K, Idol stated that "[i]n April, the FTC filed an ***unprecedented lawsuit*** to block the proposed transaction. We strongly disagree with the FTC's decision and firmly believe in the merits of this acquisition. The market realities, which the government's challenge ignores, ***overwhelmingly demonstrate that this transaction will not limit, reduce, or constrain competition***. . . .we look forward to the successful completion of the pending acquisition."

59.    Capri continued to express confidence in the completion of the Capri Acquisition throughout the Class Period.  In its Form 8-K announcing Capri's first quarter fiscal 2025 financial results filed on August 8, 2024, Defendant Idol once again downplayed the FTC's claims, stating that "Capri intends to vigorously defend this case alongside Tapestry and we look forward to the successful completion of the pending acquisition.  ***This combination will deliver value to our shareholders*** . . . ."

60.    Defendants' statements referenced in ¶¶37-59 above were materially false and misleading when made because they misrepresented and failed to disclose adverse facts about Capri's business, operations, market dynamics, and the prospects for approval of the Capri Acquisition, which were known to defendants or recklessly disregarded by them, as follows:

(a)    that the accessible luxury handbag market is a distinct and well-defined market within the overall handbag market and was understood as such by the Individual Defendants, as well as other Capri and Tapestry executives;

(b)    that Capri and Tapestry maintained analogous production facilities and supply chains for their accessible luxury handbags that were distinct from the production facilities

and supply chains used to manufacture luxury or mass market handbags, confirming that the accessible luxury handbag market is distinct from the mass market and luxury handbag markets;

(c)    that Capri and Tapestry internally considered Coach and Michael Kors to be each other's closest and most direct competitors;

(d)    that, conversely, Capri and Tapestry did not internally consider their handbag brands to be in direct competition with luxury handbags or mass market handbags;

(e)    that a primary internal rationale for the Capri Acquisition was to consolidate prevalent brands within the accessible luxury handbag market so as to reduce competition, increase prices, improve profit margins, and reduce consumer choice within that market; and

(f)    that, as a result of (a)-(e) above, the risk of adverse regulatory actions and/or the Capri Acquisition being blocked was materially higher than represented by Defendants.

61.    After a seven-day hearing, during which extensive factual and expert testimony was presented, including voluminous documentary evidence, Judge Rochon granted the FTC's motion to preliminarily enjoin the Capri Acquisition on October 24, 2024.  The court determined that a "substantial body of compelling evidence" demonstrated that, in contrast to their public statements quoted above, Defendants themselves believed that their brands were direct competitors in a well-defined "accessible luxury handbag market." Finding that Capri's and Tapestry's "internal documents are telling," the court ruled that "Tapestry and Capri executives explicitly recognize Coach, Michael Kors, and Kate Spade as close competitors."  According to the court, Defendants' statements to the investing public did not fit with the "commercial realities" to which Defendants themselves were keenly attuned.  Underscoring this point, the court observed that "Defendants

[Tapestry and Capri] repeatedly used the term ['accessibly luxury'] in the months before and after the announcement of the merger – only for the term to disappear from their lexicon once the FTC filed suit in April 2024," despite being regularly used by both companies prior to the FTC filing suit.

62.    As a result of this news, the price of Capri stock suffered a dramatic drop from $41.60 per share on October 24, 2024 to $21.26 per share on October 25, 2024, a nearly 50% decline on abnormally high trading volume.

63.    Both Capri and Tapestry were the makers of the misleading statements identified herein.  Both companies agreed in the Merger Agreement that "neither the Company [Capri] nor Parent [Tapestry], nor any of their respective Subsidiaries, shall issue or cause the publication of any press release or other public announcement or disclosure with respect to the Merger, the other Transactions or this Agreement without the prior written consent of the other Party," subject to various exceptions not relevant here.  The Individual Defendants were also the makers of the misstatements alleged herein, because they had ultimate authority over the public statements made by Capri and Tapestry during the Class Period as the companies' most-senior executives.

64.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Capri securities, Plaintiff and other Class members have suffered significant losses and economic damages under the federal securities laws.

## VI.    ADDITIONAL SCIENTER ALLEGATIONS

65.    As alleged herein, Defendants acted with scienter in that Defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of Capri and Tapestry, or in their own name, during the Class Period were materially false and misleading. Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary

23

violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Capri, and their control over and/or receipt and/or modification of Tapestry and/or Capri's allegedly materially misleading misstatements, were active and culpable participants in the fraudulent scheme alleged herein.

66.      Defendants knew and/or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of Capri and Tapestry, including the Individual Defendants.

67.      The Individual Defendants, because of their respective positions with Capri and Tapestry, controlled the contents of Capri's and Tapestry's respective public statements during the Class Period.  The Individual Defendants were each provided with or had access to the respective information alleged herein to be false and/or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected.  Because of their positions and access to material, non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. Indeed, the specific undisclosed issues involved critical information for investors that the Individual Defendants held themselves out as the persons most knowledgeable about. As a result, each of the Individual Defendants was responsible for the accuracy of Capri's and Tapestry's respective corporate statements during the Class Period and was, therefore, responsible and liable for the related representations contained therein and knowingly, or at the very least recklessly, disseminated the material misrepresentations detailed herein.

68.     In addition, internal documents, testimony, and other evidence revealed in the *FTC v. Tapestry* litigation confirm that Defendants were aware of, or at the very least recklessly disregarded, the fact that their Class Period statements were materially false and misleading when made.

## VII.    LOSS CAUSATION

69.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Capri securities and operated as a fraud or deceit on Class Period purchasers of Capri securities by failing to disclose and misrepresenting the adverse facts detailed herein.   When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Capri common stock declined significantly as the prior artificial inflation came out of the price of such securities.

70.     As a result of their purchases of Capri common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.   Defendants' false and misleading statements had the intended effect and caused Capri securities to trade at artificially inflated levels throughout the Class Period, with Capri stock trading as high as $54 per share.

71.     By concealing from investors the adverse facts detailed herein, Defendants presented a misleading picture of Capri's business, financial results, risks, and future financial prospects.   When the truth about the acquisition was revealed to the market, the price of Capri securities fell significantly.   The price of Capri stock fell to a low of $21.26 per share on October 25, 2024, removing the inflation therefrom and causing economic loss to investors who had purchased Capri securities during the Class Period.

72.     The decline in the price of Capri securities after the corrective disclosures came to light was a direct result of the nature and extent of Defendants' fraudulent misrepresentations being revealed to investors and the market.  The timing and magnitude of the price decline in Capri securities negates any inference that the losses suffered by Plaintiff and the other Class members were caused by changed market conditions, macroeconomic or industry factors, or company-specific facts unrelated to Defendants' fraudulent conduct.

73.     The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Capri securities, and the subsequent significant declines in the value of Capri securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## VIII.  <u>CLASS ACTION ALLEGATIONS</u>

74.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons who purchased Capri stock or sold Capri puts during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, the officers, directors, and affiliates of Defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

75.     ***Numerosity***. The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Capri stock was actively traded on the NYSE and there was a robust market for other Capri securities.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Capri or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice

similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

76.    ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

77.    ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

78.    ***Commonality***.  Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether Defendants' statements during the Class Period were materially false and misleading;

(b)    whether Defendants acted with scienter in issuing materially false and misleading statements during the Class Period; and

(c)    the extent of injuries sustained by the members of the Class and the appropriate measure of damages.

79.    ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## IX.    APPLICABILITY OF THE PRESUMPTION OF RELIANCE

80.    At all relevant times, the market for Capri securities was an efficient market for the following reasons, among others:

(a)    Capri common stock met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient, national stock market;

(b)    as a regulated issuer, Capri filed periodic public reports with the SEC;

(c)    Capri regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)    Capri was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms, and were publicly available and entered the public marketplace; and

(e)    unexpected material news about Capri was rapidly reflected in and incorporated into the price of Capri securities during the Class Period.

81.    As a result of the foregoing, the market for Capri securities promptly digested current information regarding Capri from all publicly available sources and reflected such information in the price of Capri securities.  Under these circumstances, all purchasers of Capri securities during the Class Period suffered similar injury through their purchases of Capri securities at artificially inflated prices and a presumption of reliance applies.

## X.    NO STATUTORY SAFE HARBOR

82.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pled in this complaint.  Many

of the specific statements pled herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor was intended to apply to any forward-looking statements pled herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, Defendants knew that the particular forward-looking statement was materially false or misleading and/or the forward-looking statement was authorized and/or approved by an executive officer of Capri and/or Tapestry who knew that those statements were materially false or misleading when made.

## <u>COUNT I</u>

**For Violation of §10(b) of the Exchange
Act and Rule 10b-5 Promulgated
Thereunder Against All Defendants**

83.    Plaintiff repeats and re-alleges each and every allegation in ¶¶1-82 above as if fully set forth herein.

84.    During the Class Period, Defendants disseminated or approved the statements specified above, which they knew or deliberately disregarded were false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

85.    The Defendants named herein violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)    employed devices, schemes, and artifices to defraud;

(b)    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Capri securities during the Class Period.

86.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Capri securities.  Plaintiff and the Class would not have purchased Capri securities at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by Defendants' misleading statements.

87.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Capri securities during the Class Period.

## COUNT II

### For Violation of §20(a) of the Exchange
### Act Against All Defendants

88.    Plaintiff repeats and re-alleges each and every allegation in ¶¶1-87 above as if fully set forth herein.

89.    The Individual Defendants respectively acted as controlling persons of Capri and Tapestry within the meaning of §20(a) of the Exchange Act.  By virtue of their respective positions as officers and/or directors of Capri or Tapestry, participation in and/or awareness of Capri's or Tapestry's operations, intimate knowledge of the respective false and misleading statements made during the Class Period, they had the power to influence and control, and did influence and control,

30

directly or indirectly, the decision-making of Capri or Tapestry, including the content and dissemination of the false and misleading statements alleged herein.

90.     The Individual Defendants were provided with or had unlimited access to copies of the respective statements alleged to be misleading prior to and/or shortly after those statements were issued, and had the ability to prevent the issuance of those statements or cause those statements to be corrected.

91.     As set forth above, the Individual Defendants had the ability to exercise control over, and did control, a person or persons who have each violated §10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, by their acts and omissions in connection with the false and materially misleading Class Period statements as alleged herein.

92.     By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action; designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

## XII.   **<u>JURY DEMAND</u>**

      Plaintiff respectfully request a trial by jury on all issues so triable.

DATED: January 28, 2025          Respectfully submitted,

**FARNAN LLP**

By: /s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Emails:  bfarnan@farnanlaw.com
         mfarnan@farnanlaw.com

*Liaison Counsel for Plaintiff FNY Partners Fund LP*


**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci (*pro hac vice forthcoming*)
Robert N. Cappucci (*pro hac vice forthcoming*)
Jonathan H. Beemer (*pro hac vice forthcoming*)
Brendan J. Brodeur (*pro hac vice forthcoming*)
230 Park Avenue, 3rd Floor
New York, New York 10169
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272
Email:  vcappucci@entwistle-law.com

*Counsel for Plaintiffs FNY Partners Fund LP*